**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAMON MUNCY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD FINANCIAL, LLC, ROBINHOOD SECURITIES, LLC, ROBINHOOD MARKETS, INC., and DOES 1-100,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Damon Muncy ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the

1

Defendants' public documents, conference calls and announcements made by Defendants, public filings, wire and press releases, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who sold any of the Affected Securities (later defined) via the Robinhood trading platform on or after January 28, 2021 as a result of Robinhood's restrictions (the "Class"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2. The Affected Securities include American Airlines Group Inc. (traded on NASDAQ under ticker "AAL"), AMC Entertainment Holdings Inc. (NYSE: "AMC"), BlackBerry Limited (NYSE: "BB"), Bed Bath & Beyond Inc. (NASDAQ: "BBBY"), and GameStop Corp. (NYSE: "GME").

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to Sections 9(a) and 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

6. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, sold AAL, AMC, BB, BBBY, or GME securities on Robinhood's trading platform on or after January 28, 2021 and was economically damaged thereby.

8. Defendant Robinhood Financial, LLC purports to operate as an institutional brokerage company. The Company purports to provide online and mobile application-based discount stock brokerage solutions that allows users to

invest in publicly-traded companies and exchange-traded funds. Robinhood Financial, LLC's business address is 85 Willow Road, Menlo Park, CA 94025.

9. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Robinhood Securities, LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial. Robinhood Securities, LLC's business address is 500 Colonial Center Parkway, Suite 100, Lake Mary, FL 32746.

10. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC. Robinhood Markets, Inc.'s business address is 85 Willow Road, Menlo Park, CA 94025.

11. The aforementioned corporate Defendants are collectively referred to herein as the "Robinhood" or the "Company."

12. Plaintiff is unaware of the true names and capacities of those Defendants sued herein as Does 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names. The Doe Defendants are individuals and entities, including hedge funds, that took short positions in the Affected Securities, conspired to negatively affect the market price of the Affected Securities, and disarm and silence individual investors. Upon information and belief, each of the fictitiously named defendants were responsible in some manner for, gave consent

to, ratified, and/or authorized the conduct herein alleged and that Plaintiff's damages, as herein alleged, were proximately caused thereby.

## SUBSTANTIVE ALLEGATIONS

13. Robinhood advertises itself as a platform that allows users access to the stock market without barriers, being among the first broker platforms to offer commission-free trades. The Company's slogan is "Investing For Everyone." Their website is rife with similar references, the Company boldly states that "[w]e're on a mission to democratize finance for all," that "the financial system should be built to work for everyone," and that they designed Robinhood as "a financial product that would enable everyone—not just the wealthy—access to financial markets."

14. Each of the Affected Securities had become popular amongst retail investors, and had recently experienced high trade volume. This increased interest caused increased volatility and large losses to those institutions that shorted the Affected Securities, losing more than $5 billion dollars in the days leading up to January 28, 2021. Most notably, GME shares experienced a meteoric rise in January 2021, rising from a close of $18.84 per share on December 31, 2020, to $347.51 on January 27, 2021.

15. The series of events that led to Robinhood's manipulation begins with Gamestop, which is traded on the NYSE under the ticker "GME." For years, GME had an absurdly high short percentage of float, over 200%. That means that for every share in the market, two were being shorted. Those who shorted GME hoped that

the price of Gamestop securities would decline significantly or that Gamestop would become bankrupt, leaving the shorted shares worthless. Retail investors, believing that the stock was undervalued, began purchasing the stock at a high volume.

16. This increased purchasing led to a higher stock price, which, when combined with GME's incredible amount of overleveraged short interest, led to what is known as a "short-squeeze." Meaning, the cost of holding the short interest was rising so dramatically that short holders were being forced to cover in order to prevent future losses. The broker who lent the shorted shares on margin may also issue a margin call that forces those short to return the share. That scramble to buy serves to increase the stock price even more.

17. Furthermore, rapidly increased retail options activity in GME was also causing a so-called "gamma squeeze." The "gamma" of an option refers to the rate of change of an option's "delta," or the amount an option price is expected to change based on a movement of the underlying security. A gamma squeeze can occur when "out-of-the-money" call options are purchased *en masse* in a particular security, often from market makers, who seek to profit on the bid-ask-spread. To avoid a risky naked short position on the option, when an "out-of-the-money" call option is sold, market makers often will hedge by purchasing the underlying security. But when done *en masse*, the increased purchasing serves to raise the stock price even

further, creating a feedback loop. When the stock price is raised further, the options gamma increases, and the market maker is forced to buy even more of the security to hedge further.

18.     This sent GME's stock price rocketing. Retail investors began to take notice of the strategy, and began searching for other, similar opportunities, and the other Affected Securities, many with a high short percentage, began to experience heavy volume as retail investors interest increased.

19.     Indeed, of the Affected Securities had an unusually high short interest, or number of shares that that had been sold short but not yet covered or closed out. These securities were primarily shorted by institutional investors. The following chart describes the shorted percentage of float[1] as of January 15, 2021, for each of the Affected Securities:

| **Security** | **Shorted Float Percentage** |
|:---:|:---:|
| AAL | 33.75% |
| AMC | 38.12% |
| BB | 9% |
| BBBY | 82.41% |
| **GME** | **226.42%** |

---

[1] Source: Yahoo! Finance.

20.     But, on January 28, 2021, Robinhood, and other brokers, restricted trading on the Affected Securities to closing securities only. As a result of this injection of fear into the market and artificial restriction of demand, the price of the Affected Securities dropped precipitously, causing significant damages to retail investors.

21.     On January 28, 2021, Robinhood published an article on its website entitled "Keeping Customers Informed Through Market Volatility." According to the article, the Company would restrict trading on the Affected Securities to closing positions only, and raise margin requirements for the Affected Securities. The release stated, in pertinent part:

> Our mission at Robinhood is to democratize finance for all. We're proud to have created a platform that has helped everyday people, from all backgrounds, shape their financial futures and invest for the long term.
>
> We continuously monitor the markets and make changes where necessary. In light of recent volatility, we are restricting transactions for certain securities to position closing only, including $AAL, $AMC, $BB, $BBBY, $CTRM, $EXPR, $GME, $KOSS, $NAKD, $NOK, $SNDL, $TR, and $TRVG. We also raised margin requirements for certain securities.
>
> Amid significant market volatility, it's important as ever that we help customers stay informed. That's why we're committed to providing people with educational resources. We recently revamped and expanded Robinhood Learn to help people take advantage of the hundreds of financial resources we offer and educate themselves,

including how to make sense of a volatile market. In 2020, more than 3.2 million people read our articles through Robinhood Learn.

22. As a result of Robinhood's actions, retail investors could no longer search for the Affected Securities on the Company's app, and were limited to selling open positions (the button that allowed customers to purchase was greyed out). By increasing the margin requirement on the Affected Securities, some who had purchased the securities on a margin loan were forced to sell or face a margin call.

23. After Robinhood restricted trading of the Affected Securities on their trading platform, the price of the Affected Securities fell dramatically. That same day, AMC shares fell $11.27 per share, or 56%, to close at $8.63 per share, BB shares fell $10.45 per share, or 41%, to close at $14.65 per share, BBBY shares fell $19.25 per share, or 46%, to close at $33.64 per share, and GME shares fell $153.91 per share, or 44.3%, to close at $193.60 per share.

24. This closure had significant benefits to both market makers and large, institutional investors who were short the stocks. For example, the total "delta exposure" on GME was decreased by over $4 billion as a result of stock. Market makers and those with a significant short interest breathed a sigh of relief. Large, institutional investors were able to continue trading the Affected Securities despite Robinhood's prohibition of retail trading.

25. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Affected Security's shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants sold the Affected Securities on the Robinhood trading platform on or after January 28, 2021, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Defendants, members of the Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27. The members of the Class are so numerous that joinder of all members is impracticable. The Affected Securities were actively traded on the Robinhood trading platform via the NASDAQ and NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

28. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about trading of the Affected Securities;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) The Affected Securities met the requirements for listing, and were listed and actively traded on NYSE and NASDAQ, highly efficient and automated markets;

(b) As public issuers, issuers of the Affected Securities filed periodic public reports with the SEC, NASDAQ, and NYSE;

(c) Issuers of the Affected Securities regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as

communications with the financial press and other similar reporting services; and

(d)    The material misrepresentations and omissions alleged therein would tend to induce a reasonable investor to misjudge the value of the Affected Securities.

33.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### Violations of Section 9(a) of the Exchange Act
### Against Defendants

34.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

35.    Defendants affected and distorted the normal market dynamics for the Restricted Securities by artificially limiting their purchases on the Robinhood trading platform, and raising margin requirements to force those who held a Restricted Security to sell.

36.    Defendants, as registered broker dealers, induced the sales of the Affected Securities by circulation or dissemination in the ordinary course of

business of information that the price of the Affected Securities will likely fall because of market operations of Defendants conducted for the purposes of depressing the price of the Affected Securities.

37. By enacting such restrictions, Defendants effected a scheme constituting a series of transactions for the purpose of pegging, fixing, or stabilizing the prices of the Affected Securities.

38. Plaintiffs would not have sold their Affected Securities if not for Defendants' unlawful conduct.

39. As a direct and proximate result of Defendants unlawful conduct, Plaintiff and members of the Class suffered damages in connection with their purchases of the Restricted Securities during the Class Period.

### COUNT II
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

40. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. Defendants carried out a plan which was intended to, and did, (a) deceive the investing public, including Plaintiffs and the Class; and (b) artificially drive down the price of the Affected Securities.

42. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts

14

necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon the owners of the Affected securities in violation of §10(b) of the Exchange Act and Rule 10b-5. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

43. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal the adverse material information as specified herein.

44. Defendants' liability arises from the fact that they developed and engaged in a scheme to manipulate the price of the Affected Securities, and were aware of and engaged in the dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

45. Defendants had actual knowledge of the misrepresentations, omissions and deceptive conduct alleged herein, or acted with reckless disregard for the truth. Defendants' acts were done for the purpose and effect of concealing the scheme alleged herein from the investing public, and to artificially drive down the value of the Affected Securities.

46. By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and members of the Class suffered damages in connection with their respective purchases and sales of the Affected Securities.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)  declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)  awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)  awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 2, 2021                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*